Your Honors, and may it please the Court, Morgan Russell for Petitioner Lakhwinder Singh, and I'll try to save two minutes for rebuttal. Because the last case concerns some of the same issues, I want to just jump in on some of the issues that are the same and some that are a bit different. With respect to retroactivity, I would agree with the point raised by Judge Burr's interpretation from the BIA. It's an issue here. What does Rodriguez-Rodriguez say that you think gives, protects Mr. Singh? So it cites to the, it gives, it alludes to an interpretation of the, of a crime of child abuse and it points to the 1996 edition of Black Laws Dictionary requiring or defining child abuse as requiring an affliction of cruelty. The prior sentence says, by its common usage, child abuse encompasses actions or inactions that also do not require physical contact. Right. No physical contact. And that's not what we're saying. We're saying some kind of harm, whether it be emotional, mental, or physical. And I think, so importantly, the government's made the point that this Court remanded in the Velazquez case for the BIA to make a more authoritative pronouncement. That had to do partly with the fact that in the Velazquez case, the BIA hadn't applied Rodriguez because it had just summarily affirmed an IJ decision that didn't explicitly apply Rodriguez. And Rodriguez did not deal with this definition. This was sort of an aside, wasn't it? Well, it was sort of an aside, but it was an aside from the en banc BIA that was then repeatedly applied in BIA decisions afterwards in the period up until 2008 in Velazquez. So, for example, in this Court's decision in Fregoso, the BIA below applied Rodriguez. And the decisions of the Tenth Circuit in Ochieng in 2008, the BIA below had applied Rodriguez. And there's other unpublished BIA decisions throughout that period that also applied it because it was a statement of the scope of this from the en banc BIA. When the BIA cited to Rodriguez, what did it say that Rodriguez said? How did the BIA characterize it? It noted the definition of cruelty from Black's Law 6 edition, which is sort of appropriately from before 1996. Subsequent comments the BIA has made sort of looking at post-1996 definitions and statutes are inappropriate under Nijhuan. That much we know. And that was something that was explained by the Tenth Circuit in Ibarra. And then it applied it to, in a series of cases, to statutes that clearly fell within that. Involved cruelty because they involved the inflection of some kind of harm, whether physical or not, whether physical contact or not. In Fregoso, the BIA below applied it but made a mistake at the back end of the categorical analysis because it ignored the endangerment part of 273AB. And that's what this Court's decision there was about. I think another important point that goes to both retroactivity and the Chevron issue, and I think Judge Wardlaw was right that in this case the Court doesn't necessarily need to reach the Chevron issue because it could decide on retroactivity, which my understanding is that that is a case-by-case analysis. It wouldn't be categorical. It depends partly on the personal circumstances of the petitioner in terms of the burden. Here the burden is especially heavy. He's been here for a very long time. That makes the burden of deportation heavier on him. He's got three citizen kids, a citizen wife. But I don't think that means that you sort of go behind the plea agreement. In St. Cyr and Miguel Miguel, I think establish the proposition that that part is assumed, that he relied, he was aware, and him and his criminal defense counsel were aware of the immigration consequences and pled with an understanding of trying to minimize those. On a point that I think goes to both Chevron and retroactivity, I just want to stress how much of a departure Sorum is from the statutory text and thereby also from the BIA interpretations that had come before. So in Sorum, they're sort of leaping beyond the three phrases in the text, which are child abuse, child neglect, child endangerment, to graft on this very distinct legal concept of, sorry, the last one, child abandonment, to graft on this distinct legal concept of child endangerment, which the idea of reckless endangerment and then later child endangerment was something that existed quite distinctly in criminal law, even by 96. I think if Congress had meant to include that distinct kind of notion, it would have done so, and it could have done so specifically. I think the other even bigger problem with Sorum in terms of Chevron and that makes its retroactive application especially unfair is that, and this goes again to a point that Judge Wardlaw was getting at, I think, is that it really gets away from the crime of...that mandates a categorical approach both at the front end, meaning distilling the elements of a generic Federal offense, rather than doing what the BIA has now explicitly said it's doing here, which is going fluidly State by State and sort of in each case sort of unsurprisingly finding that the State statute fits within its fluid, I guess you could say. And I think that a really good case on that point, so it's interesting, Ibarra makes that point, and in the Second Circuit in a 2015 case called Flores disagreed with what the Tenth Circuit said. They said, no, no, no, that doesn't apply to Chevron. We have to defer to the Board's interpretation. They don't have to use the same sort of generic elements approach. I don't think this Court can say that because this Court has already, I think, said that these kind of statutory formulations do dictate a categorical analysis, not only in terms of comparing the State statute to a generic Federal offense, but also in getting at a generic Federal offense in the first place. And I think the best case that I've seen on that is a case called Estrada-Espinosa from 2008. It's 546F3-1147. And there's a discussion at pages 1157 to 1158 that I think is really on point. It's actually about the approach that the Board took in Rodriguez-Rodriguez, that same case, to the sexual abuse of the minor provision. And there the Board had said that we're not really going to arrive at a specific definition or specific elements, but we're going to use this Federal statute as sort of a guide and take it State by State. And this Court really roundly rejected that and said that is contrary to Taylor. That's exactly what Taylor refused to do with a crime of burglary, aggravated  What's the citation on that case? It's Estrada-Espinosa, 546F3-1147. And it's at pages 1157 to 1158. I'm reading from that portion. It says the underlying theory of Taylor is that a national definition of the elements of a crime is required so as to permit uniform application of Federal law in determining Federal effect of a prior conviction. Without defined elements, a comparison of the State statute with a Federally defined generic offense is not possible. They also, just above that, said that when the BIA hasn't done anything to particularize the meaning of a term, giving Chevron deference to its determination of that meaning has no practical significance. So here I think the BIA has basically said, I don't even know that the Court would treat this as a Chevron situation because the BIA has said that it's going to go case by case, and so really it would need to at the very least publish every decision that it decides on this issue in order to get Chevron deference. But I think the bigger issue is that they're just conflicting with the plain language of the statute, which if nothing else requires that it actually draw some line, that it actually define some element. And I don't think that the way it's approached this subject in Sorum or in the matter of Mendoza-Sorio case that my colleague referred to from 2016, where it found that a New York statute was categorically a crime of child abuse, child neglect, or abandonment, even though it noted that there was a New York case that applied that statute to a child being locked in a New York City apartment for two and a half hours with no particular danger that anything would happen to someone who left them alone after they dropped them off from school in an apartment for two and a half hours alone. I think that that shows that the Board is not drawing any kind of reasonable line or distilling any kind of actual element here. I think that 273AA, the minimum conduct for the felony, is really quite coextensive with that for the misdemeanor. This Court in Fragoso talked about leaving a child by a pool or near traffic. I think those are absolutely things that could be charged under the felony as well. Those are situations that with a small child could absolutely be likely to cause great bodily injury or death by drowning or a car crash. There are cases, the briefs don't reach this point, but there are cases that show that the kinds of things that are prosecuted under the misdemeanor and felony are really not nearly as distinct as this Court in Fragoso talked about. And so I think that the Board is really not drawing any kind of clear line that this Court should defer to. May it please the Court, Leigh Ann Whalen-Cohen on behalf of the Attorney General. I'd first like to address the argument that SOROM, because it allows the Board to look at a statute-by-statute or state-by-state basis, is somehow ambiguous. SOROM directly addressed this issue and gave a well-reasoned answer for why it was doing this part of the case. Notice that at the time, criminal convictions used, or excuse me, state statutes used different terms to talk about the level of harm that would be required under endangerment statute. They used various different terms such as immediate, substantial. And so rather than harmonize all those terms and inadvertently exclude state statutes based purely on the term that they used to define the level of harm, they're allowing the Board to look at each case on a state-by-state basis. However, the Board has given a definition, so this is distinguishable from the situation in Estrada Espinoza, where this Court found that the Board was not giving any definition. Here the definition is clear. It's a combination of Velazquez-Herrera and the clarification in SOROM that it needs to constitute maltreatment of a child or impair a child's physical or mental well-being, and that injury is not required so long as the threat of harm is sufficiently high. Counsel, what do you do with opposing counsel's point that even if we thought that Rodriguez-Rodriguez was dicta, that the Board itself applied it in a number of cases and other circuits sort of recognized that? Yes, that's an accurate articulation, but it is still not a pronouncement of the Board's. But if a subsequent court says it may have been dicta, but it's dicta we're going to honor, then in the subsequent case they have adopted it. So even if we thought that the Board had made it all up, if they've adopted it and applied it in subsequent cases, then it becomes law in that case. And then when the Board changes the position, then the Court can do an analysis under, excuse me, an analysis under Brand X, where the subsequent clarification has a... The Board's got freedom under Brand X to change all kinds of things. The question here is that Mr. Singh pled guilty in 2001, and it would be another seven years before the Board got around to Velazquez. So assuming that Mr. Singh was well advised by his counsel, what should they have thought? So even if we applied the Rodriguez definition, the definition simply required cruelty. And many courts have noticed that Velazquez is, yes, broader, but consistent with Rodriguez. And Petitioner's conviction here was for willful injury on a child. This statute has two prongs, the endangerment prong and the direct infliction of harm. And while I'm not suggesting that the statute is divisible and this Court must find that the entire statute fits the definition, it's unreasonable to think that Petitioner here could have relied on an ambiguity in the Board's definition of child abuse to think that his conviction of direct injury on a child did not fit the Board's definition of cruelty. And so even if this Court were to apply the Rodriguez definition or view retroactivity through that lens, Petitioner still has a burden to show that he relied on that law in accepting a plea. And again, because the definitions, the Board's articulations from Rodriguez through now Osorio are consistent. So the government's contention is that failing to buckle the child in a seat belt is a form of cruelty? The Board's definition in that, if the level of risk is sufficiently high, then yes. For the same reason. The level of risk being what? Risk of serious bodily injury or death, which is required by this statute. Right. But it has to be a categorical approach. So is failing to buckle a child in a seat belt categorically cruelty? I'm not sure that failure to buckle a child in a seat belt would fit under the felony provision unless there are other aggravating factors. There was a prior case. Yes, but that was the misdemeanor provision, subsection B, which actually required almost a complete flip of the standards here. It required conditions other than those likely to cause serious bodily harm or death, and also simply required that the child may be endangered, whereas this statute requires that the child actually is endangered. I think part of the question here is whether cruelty requires something different from just endangering a child. You endanger a child, the child might be asleep the entire time, and that would endanger the child by failing to buckle the child in. I'm not sure I would call that cruelty. It's horrible judgment. It may be punishable. It may be a lot of things. I'm not sure I would call it cruelty. But the specific question in this case is a higher level than regular endangerment. And so while we might not think that a But I'm looking at Rodriguez. So I'm trying to figure out, in 2001, when Mr. Singh pled guilty, what was his lawyer supposed to advise him about the status of the law? Even if he was applying the cruelty definition, which was dictum Rodriguez, this statute, the felony provision, subsection A, would fit because of the requirements that modify the entire statute, which are willful conduct that are under conditions likely to cause great bodily harm or death to a child. So unlike the misdemeanor provision... But it doesn't mention cruelty. It doesn't say anything about cruelty, which is something different, like a different character part. It's not just willful. It isn't tantamount to cruel. But putting a child in a situation that could result in serious bodily harm or death is cruelty. Really? I don't know. Child's asleep in the backseat. Father negligently, willfully, horribly fails to buckle the child in. But the child is asleep in the backseat. And we've been cruel to the child? Well, again, I would distinguish a situation like that, which would be more appropriately analyzed than the misdemeanor provision, than the felony provision. Right. But that's what he was charged with here. And he was convicted under that. Does that make it cruel? He was convicted under the felony provision. And so categorically, the court has to accept... That he willfully placed his child in risk of great harm. I don't think I'm disputing, and I certainly don't think the government is disputing, I don't even think opposing counsel is disputing, the validity of his conviction under 273AA. The question is whether 273A is categorically cruelty. If we look at this course in Decision of Fragoso, it talks about the major distinctions between AA and AB. And I think that can inform... I understand that there's a huge difference between those two. But if Rodriguez, if we were entitled to rely on the cruelty definition in Rodriguez, then I've got to know how is this act, how is 273AA, how does it encompass cruelty? I understand it would be included within that. But is everything that's covered under 273AA cruelty? Well, if we look at the consistency of what the board has intended to cover by these child abuse crimes, then yes. And so while Velazquez is admittedly broader than cruelty, when we look at the risk of harm that is covered by this statute, then... But Velazquez is broader than cruelty. But, again, because going back to the first argument... Mr. Singh may not have an argument under Velazquez, but he might have an argument under Rodriguez. The petitioner here actually was convicted under the willful infliction of direct, unjustifiable pain on the child? So here's the other problem that I'm having with trying to sort through all of this. These are guilty pleas. We don't know what actually happened. So we can't even really consider what actually happened. We have to look at it categorically. But we all know, as a practical matter, you get a guilty plea because you're either getting a lesser sentence or you're pleading to a lesser charge or it's some kind of compromise between the government and the defendant as to what level of culpability and liability is there, is present. And so we have these pleas here. And I don't think that... And that's when it's especially important to look at the actual text of what they're pleading to. And so when we talk about all these scopes of conduct, we have to look at what would be included and what would not be included in that. So I think it interacts with the fact that these are pleas as opposed to actual convictions. I mean, they're convictions, but I mean actual... But because this court is bound by the categorical approach and this is not a circumstance-specific inquiry, the court is bound to look at the minimum level of conduct under the statute. And so... Right, and that's why I'm having a problem with that because I think that it's been changing over time in the BIA's eyes and changing kind of dramatically, really. The way that the states... The way the BIA defines it. Well, the BIA... The government's position that it has not been a dramatic change and that the BIA is actually in line with the way that the states have changed their laws. One of the points that came up earlier is whether or not Congress could have anticipated child endangerment or should have included that term in the actual statute. But at the time, there was a growing acceptance by the states to include child endangerment in their child abuse laws. And this statute is actually a perfect example of that, where you have one prong that is traditionally what you would think of as child abuse, direct infliction of unjustifiable pain, and these child endangerment. But in this statute, comparing the felony provision to the misdemeanor shows that the state is going to require a much higher level... You have to be looking at Congress's intent at the time they enacted the statute, which was 1996. Yes, and even at the time, there were... I believe in SOROM they point to at least six states that... Six states, and they were looking at civil law. Well, in civil law, they were looking... Yes, they were looking at civil law in both Alaska and SOROM. They also looked at the growing acceptance in those states. And nothing precludes them from doing that in this situation. And the decision to use those terms is entitled to deference. And this Court and the Supreme Court have noted that an agency's decision is not set in stone, and that is to reflect the important policy and policy decision-making arguments that the board might be better equipped to make than the court. If there are no further questions, I see I'm out of time. We ask that you deny the petition for review. Thank you, Ms. Cohen. Mr. Russell, the Court is feeling indulgent, if you'd like a minute. Just on a couple of points, I think, you know, my opposing counsel just acknowledged, as the government did in Fregoso, that Velasco's was broader than Rodriguez's. And I don't think there's any question that SOROM is broader than Velasco's. And so, you know, it's really those two jumps together, I think, you know, combined with how big a departure that SOROM is from the statutory text itself, I think makes clear that there is an abrupt change for purposes of the second Montgomery Ward factor. I do think because it's case-by-case and the court wouldn't need to get to the broader issue of whether it refuses to defer under Chevron, that's narrower grounds to decide this case. I think I also am not sure why counsel said that. She knows that the conviction here was for the willful infliction prong. The plea minute order certainly doesn't say that. The police report suggests that, but that's, of course, beyond what we can look at. And I don't think the information that he was charged with is in this record of conviction. No, we're just looking at the categorical anyway. So we have to take whatever is in the statute that he might have been convicted of. Right. All right. Thanks very much, Your Honor. Thank you. And we thank both counsel for the argument. Sing Sangera is submitted on the briefs. And that will bring us to the last case on the oral argument calendar.
judges: Wardlaw, Bybee, Illston